**Maurice Mickey MANDEL, Appellant,**

v.

**David M. HERITAGE, Warden, United States Penitentiary, McNeil Island, Washington, Appellee.**

**No. 16376.**

United States Court of Appeals Ninth Circuit.

June 5, 1959.

Maurice Mickey Mandel, in pro. per.

Charles P. Moriarty, U. S. Atty., David J. Dorsey, Asst. U. S. Atty., Seattle, Wash., Charles W. Billinghurst, Tacoma, Wash., for appellee.

Before POPE, CHAMBERS and HAMLEY, Circuit Judges.

PER CURIAM.

Mandel has had trouble with "forged securities" in interstate commerce— some operation involving "bad checks." 18 U.S.C. § 415.* The record here begins in August, 1948, in the Northern District of Oklahoma. In a total of seven similar counts found in four indictments or informations he was sentenced on August 17, 1948, to serve ten years on each count, all sentences to run concurrently. A week later, on August 24, on another similar count in another information or indictment he was sentenced to serve five years, the time to be concurrent with that of the sentences of August 17. He was received at Leavenworth penitentiary on August 26, 1948, where apparently the time of his sentence was established as having started to run as of the date of the first sentence: August 17, 1948. On September 8, 1954, he was released conditionally from the Federal Prison Camp at Tucson, Arizona, a notation being made on his record that there remained 1438 days to be served.

On October 26, 1954, a member of the U. S. Board of Parole issued a warrant for Mandel's arrest upon the ground that the latter had violated the conditions of his release. On January 5, 1955, pursuant to the warrant he was arrested in Omaha, Neb., and on January 14, 1955, he was returned to Leavenworth peni-

* Now 18 U.S.C.A. § 2314.

tentiary. There he was given credit for having begun to serve time as of January 5, 1955. Apparently while incarcerated he is a good prisoner, and he was released on June 16, 1957, on a reconditional release, a notation then being made on the record that there were 544 days remaining to be served.

Out once again, Mandel was soon in trouble, and on February 7, 1958, a member of the U. S. Board of Parole issued a warrant for rearrest for violation of the terms of the reconditional release. Pursuant to the warrant, arrest was made at Oakland, Calif., on November 5, 1958, and he was returned this time to the federal penitentiary at McNeil Island, State of Washington. There his time was noted as having started to run again as of November 5, 1958.

It would appear that actual time served is as follows:

Aug. 17, 1948, to Sept. 8, 1954.
6 years and 22 days
Jan. 5, 1955, to June 16, 1957.
2 years, five months, 11 days
Nov. 5, 1958, to date.
Approximately 6 months.

November 4, 1959, has been set by the prison authorities as the prisoner's prospective release date.

Upon a petition for habeas corpus, the district court on January 9, 1959, denied issuance of the writ, after having required the respondent warden to show cause in writing.

While the petition is lengthy, somehow Mandel seems to believe that he has not lost his credit for "good time" served during his first two periods of incarceration or that the prison authorities credited on his "time schedules" an excessive amount of "good time" and somehow this is to his advantage now.

We have considered carefully Sections 4161, 4163, 4164, 4165, 4205, and 4207 of Title 18 U.S.Code, which appear to have application here.

We are certain that the prisoner on rearrest is not entitled to take advantage of an erroneous calculation of time made previously (if such it is) and that on re-

arrest his "good time" theretofore earned or credited was properly and legally forfeited. This leads to the conclusion that the prisoner is now only entitled to such "good time" as he may earn on the period of time remaining unserved (without allowance for "good time" previously credited) at the time of his last rearrest. Yates v. Looney, 10 Cir., 250 F.2d 956; Morneau v. U. S. Board of Parole, 8 Cir., 231 F.2d 829.

The judgment of the district court is affirmed.