Harold BRAHAM, and the class of all persons similarly situated, Appellants,

v.

Helen BIERNE, Commissioner of Department of Health and Social Services, Robert Hatrack, Director of Division of Adult Corrections, Department of Adult Probation and Parole, Appellees.

No. 7739.

Court of Appeals of Alaska.

Feb. 10, 1984.

Judith K. Bush, and Andrew R. Harrington, Alaska Legal Services Corp., Fairbanks, for appellants.

Patrick W. Conheady, Asst. Atty. Gen., and Norman C. Gorsuch, Atty. Gen., Juneau, for appellees.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

COATS, Judge.

Prisoners are entitled under Alaska statutes to accumulate good time which is credited against their sentences.[1] Prisoners who have earned good time, and who have not earlier been released on parole in the discretion of the parole board, are subject to mandatory release under the provisions of AS 33.20.040(a):

> A prisoner serving the term or terms for which the prisoner was sentenced less good time deductions shall be released unconditionally if there remains less than 180 days to serve under the sentence. If there remains more than 180 days to serve under the sentence, a prisoner, upon release, shall be considered *as if released on parole* until the expiration of the maximum term or terms for which the prisoner was sentenced less 180 days.

(Emphasis added).

The question raised in this case is whether a prisoner who is mandatorily released under the provisions of AS 33.20.040(a) is subject to special conditions of parole which are the same as special conditions of parole which the parole board might apply to a prisoner who was released under the discretionary release powers of the parole board. The state argues that the parole board has the power to impose special conditions of parole under the authority of AS 33.20.040(a).

The named plaintiff, Harold Braham, was granted leave pursuant to Alaska Rule of Civil Procedure 23(b)(2) to represent a class of prisoners defined as follows:

> All state prisoners past, present or future mandatorily released from prison after completion of their sentences less good time deductions who are or will be subjected to custodial parole conditions during the period of their good time.

Braham was released on March 14, 1982, from the Fairbanks Correctional Center where he completed a six year sentence less 641 days for good time which he earned. Braham and other prisoners similarly situated have been subject to special parole conditions imposed by the state. Braham filed this action in superior court.

---

1. The current statute providing for the accumulation of good time, AS 33.20.010, reads as follows:

    *Computation of good time.* Notwithstanding AS 12.55.125(f)(3) and (g)(3), each prisoner convicted of an offense against the state and sentenced to imprisonment, whose record of conduct shows that the prisoner has faithfully observed the rules of the institution in which the prisoner is confined, is entitled to a deduction from the term of imprisonment of one day for every three days of good conduct served.

Judge Gerald J. Van Hoomissen granted the state's motion for summary judgment. Braham appeals to this court from this ruling and we affirm.

Braham argues that under the Alaska statutes and the supreme court's interpretation of those statutes in *Morton v. Hammond*, 604 P.2d 1 (Alaska 1979), he should not be subject to special conditions of parole but can be revoked from his parole only if he commits a crime. In order to understand Braham's argument, and why we reject that argument, it is necessary for us to analyze *Morton v. Hammond*. Bradford Morton was a prisoner who was mandatorily released under AS 33.20.040 because he had accumulated good time. While he was on mandatory release, the parole board revoked him, apparently because the board found probable cause to believe that he committed a crime. Morton argued that he was not subject to parole board jurisdiction when he was mandatorily released. He pointed to the language of AS 33.15.190 which reads: "A prisoner released on parole remains in the legal custody of the [parole] board until the expiration of the maximum term or terms to which he was sentenced, less good time allowances provided by law." 604 P.2d at 3.[2] Morton contended that under this statute, since he had served his sentence less good time allowances, he was not subject to parole board jurisdiction. The state argued that the supreme court should interpret the lan-

guage of AS 33.15.190 in light of AS 33.20.-040 which provides that a person who is to be released because of good time accumulation is released "as if released on parole until the expiration of the maximum term or terms for which he was sentenced less 180 days." The state argued that the two statutes could be reconciled by interpreting "good time allowances provided by law" as including and consistent with the mandatory release scheme of AS 33.20.040. The state argued that under that statute Morton was subject to parole board jurisdiction.

Justice Boochever wrote an opinion in which Justice Connor joined. Justice Boochever reasoned that AS 33.20.040 and AS 33.15.190 were "almost hopelessly in conflict." 604 P.2d at 3. He therefore applied a rule of statutory construction that statutes which were enacted at the same time, as the statutes in question were, should be construed if possible to be in harmony with each other.[3] He reconciled the two provisions by holding that Morton was not in the legal custody of the parole board while he was on mandatory release but could be revoked if he violated a *statutory* condition of parole. Since AS 33.15.090[4] provides that the parole board may revoke parole for violation of a law or ordinance, and since Morton had apparently been revoked for violating a law, the opinion held that Morton had properly been revoked. The opinion reasoned, however, that Morton

**2.** Alaska Statute 33.15.190 reads as follows:
*Release and terms and conditions of release.* The board may permit a parolee to return home if the home is in the state, or to go elsewhere in the state, upon such terms and conditions, including personal reports from the paroled person as the board prescribes. The board may permit the parolee to go into another state upon terms and conditions as the board prescribes, and subject to the provisions of any compact executed under the authority of AS 33.10. and amendments to it. *A prisoner released on parole remains in the legal custody of the board until the expiration of the maximum term or terms to which the prisoner was sentenced, less good time allowances provided by law.* While in the custody of the board, a person is subject to the disabilities imposed by AS 33.30.310.
(Emphasis added).

**3.** Justice Boochever explained the doctrine of statutory construction which he applied as follows:
> The statutes in conflict here were enacted at the same time and concern the same subject, and are therefore *in pari materia*. "Statutes *in pari materia* although in apparent conflict, are so far as reasonably possible construed to be in harmony with each other." 2A C. Sands, Sutherland Statutory Construction § 51.02, at 290 (4th ed. 1973).
604 P.2d at 3 n. 5.

**4.** AS 33.15.090 provides:
*Revocation of parole.*
The board may revoke the parole granted to a prisoner for violation of a law or ordinance, or condition imposed by the board.

could not have been revoked by the parole board for a violation of a special condition of parole which was not a violation of a law or ordinance.

Justice Rabinowitz, joined by Justice Matthews, concurred that the parole board had the authority to revoke Morton. However the concurring opinion reasoned that:

> AS 33.15.190 provides, in part, that "A prisoner released on parole remains in the legal custody of the [parole] board until the expiration of the maximum term or terms to which he was sentenced, less good time allowances provided by law." In our view, the phrase "good time allowances provided by law" is defined in AS 33.20.040(a). Thus, AS 33.20.040(a) limits the benefit of good time allowances to a prisoner already paroled to a maximum of 180 days. [Footnote omitted.]

Under the reasoning of the concurring opinion, Morton, or another prisoner who was released under the mandatory release provisions of AS 33.20.040(a), would be subject to parole board jurisdiction, and would be subject to having the parole board set special conditions of parole. This would subject a person who was on mandatory release to revocation of his parole for violation of those conditions.[5]

Braham argues that we should adopt the reasoning of the opinion of Justice Boochever in *Morton v. Hammond,* and hold that during the period while he was on mandatory release the parole board could revoke his parole only if the board found that he violated a law or ordinance. However, since the supreme court was split in that case by a two to two vote, we do not believe that the opinion of Justice Boochever is entitled to any more weight than the concurrence by Justice Rabinowitz, which also commanded two votes. We find the opinion of Justice Rabinowitz to be more persuasive. There is no disagreement that AS 33.15.190 and AS 33.20.040(a) were passed by the same legislature at the same time and concerned the same subject. 604 P.2d at 3 n. 5. It seems more sensible to us to reconcile these two statutes to give effect to both and to assume that AS 33.20.040(a) clarifies AS 33.15.190 than to assume that these two statutes are "almost hopelessly in conflict." We accordingly hold that Braham and others like him who are released mandatorily under the provisions of AS 33.20.040(a) with greater than 180 days to serve under their sentences are released "as if released on parole." We hold that this phrase means that the parole board has the authority to set special conditions of release on parole which are the same as the special conditions which the parole board sets for prisoners which it releases by exercising its discretion. The parole board may revoke the parole of a person on mandatory release who violates these special conditions.

The judgment of the superior court is AFFIRMED.

---

**5.** Justice Rabinowitz explained the doctrine of statutory construction which he applied as follows:

> In *Matter of Estate of Hutchinson,* 577 P.2d 1074, 1075 (Alaska 1978), (footnote omitted) we stated, in part:
>
> It is an established principle of statutory construction that all sections of an act are to be construed together so that all have meaning and no section conflicts with another.

Further, where one section deals with a subject in general terms and another deals with a part of the same subject in a more detailed way, the two should be harmonized, if possible; but if there is a conflict, the specific section will control over the general.
*See also* 2A C. Sands, Sutherland Statutory Construction 51.02 (4th ed. 1973).
604 P.2d at 4 n. 2.